IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

David Varnadore,

      Plaintiff,

v.

Nationwide Mutual Insurance Co.,

      Defendant.

Case No: 2:13-cv-827

Judge Graham

Opinion and Order

Plaintiff David Varnadore brings this action for breach of contract and fraudulent inducement against defendant Nationwide Mutual Insurance Company. Varnadore worked as an insurance agent for Nationwide in South Carolina from 2010 to 2012. Varnadore alleges that Nationwide breached an agreement to pay him a certain amount upon the termination of his agency. Nationwide counters that at the time Varnadore terminated his agency, the parties entered into an amended agreement that, among other things, decreased the amount to be paid to Varnadore. Nationwide alleges that it did not commit a breach because it paid the lesser amount to Varnadore in compliance with the amended agreement. Varnadore alleges that the amended agreement is not enforceable.

This matter is before the court on Nationwide's motion for judgment on the pleadings, which seeks a judgment against the claims brought in the complaint and a judgment in favor of Nationwide on its counterclaim for declaratory judgment. For the reasons state below, the motion is granted.

I.  Background

The following recitation of facts and allegations is based on the complaint, Nationwide's answer and counterclaim, plaintiff's answer to the counterclaim, and the exhibits attached to the pleadings.

In April 2010 Varnadore and Nationwide entered into a Replacement Agency Executive Agreement (the "RAE"). See RAE (attached to the Complaint as Ex. A). The RAE made Varnadore an insurance agent in South Carolina and allowed him to service Nationwide policies that

1

had been serviced by a former agent whom Varnadore had replaced. He worked on commissions based on a compensation schedule that varied by the type of policy sold or renewed. See id., § 16; see also Ex. E to the RAE (attached to the Answer and Counterclaim as Ex. A, at pp. 25-29).

The RAE provided that the "Value" of the right to service the assigned policies was $393,787. See RAE, § 12.A. Varnadore was required to pay back the Value over time, so long as he worked as an agent for at least six months. Id. In May 2011 the parties amended the RAE to state that the Value was $275,224. See May 2011 Amendment (attached to the Answer and Counterclaim as Ex. C).

The RAE further provided that Varnadore would be entitled to an Early Termination Payment, again so long as he worked at least six months. See RAE, § 18. The Payment was based upon a formula and would be made after the RAE was terminated by either party. Nationwide had the right to offset the Payment against any remaining Value owed by the agent at the time of termination.

Varnadore tendered a proposed resignation that would have been effective on December 31, 2011. Nationwide persuaded him to make the resignation effective on January 31, 2012. Varnadore alleges that he was entitled to an Early Termination Payment of $97,000. He further alleges that he made "professional and financial arrangement[s] in anticipation of receiving the Early Termination Payment." Compl., ¶ 19.

Nationwide sent Varnadore a letter dated February 6, 2012 (the "Letter") in which it proposed that the parties enter into an Amendment, which was included with the letter. See Letter (attached to the Complaint as Ex. B). The Letter acknowledged Varnadore's right under the RAE to the Early Termination Payment. Id. ("It is our understanding that you . . . are looking forward to receiving the Early [Termination] Payment . . . ."). But the Letter proposed eliminating the Early Termination Payment provision and replacing it with a Refund Payment provision by which the agent would, upon termination of the RAE, receive a payment equal to the amount of money the agent had paid toward the Value. The Letter stated that Nationwide had determined that Varnadore would receive a Refund Payment of $21,926 under the proposed Amendment. The Letter further explained that the Amendment would also eliminate the agent's obligation to pay back the remaining Value upon termination of the RAE.

Varnadore signed the Amendment on February 17, 2011 and initialed each page. See Amendment to RAE (attached to the Complaint as Ex. C). As the Letter described, the Amendment contained a provision eliminating the agent's obligation to pay back the Value after

2

termination of the RAE.  Id., § 1.  The Amendment further provided that in the event of termination the agent would be entitled to a Refund Payment in an amount equal to the amount of money the agent had paid toward the Value.  Id., § 3.  The Amendment also contained a provision whereby "[b]y signing the Amendment, Agent hereby . . . waives all claims that he/she has or may have against Nationwide . . . as of the date of his/her execution of this Amendment."  Id., p. 3.

Varnadore had paid $21,926 toward the Value as of the date of his termination of the RAE.  Nationwide paid him this amount after the Amendment was entered into, and Varnadore kept the payment.  See Pl.'s Answer to Counterclaim, ¶ 19.

Varnadore filed suit in May 2013 in South Carolina state court.  Nationwide removed the action to a federal district court in South Carolina on the basis of diversity jurisdiction.  The action was transferred to this court in August 2013 under 28 U.S.C. § 1404.

The complaint asserts five causes of action.  The first is for breach of contract.  The complaint alleges that Nationwide breached the RAE by not paying Varnadore the $97,000 Early Termination Payment.[1]  The next second, third and fourth claims essentially allege fraudulent inducement, but are listed as separate torts.  The second claim is for breach of contract accompanied by a fraudulent act.  The complaint alleges that Nationwide's alleged breach was accompanied by false statements about the Amendment meant to induce Varnadore to accept the Amendment.  The third claim is for fraud and it alleges that Nationwide made false statements about the benefits he would receive by entering into the Amendment.  The fourth claim is for fraudulent inducement and it repeats in substance the allegations of the second and third claims.  The fifth claim is for unfair trade practices under South Carolina Code Ann. § 39-5-20(a).  The complaint alleges that Nationwide deceived Varnadore in refusing to pay him the Early Termination Payment and inducing him to accept the Amendment.

Nationwide asserts a counterclaim for declaratory judgment that the Amendment is valid and enforceable.  Nationwide further seeks an award of attorney's fees under a clause of the RAE that provided that an agent would pay reasonable attorneys' fees to Nationwide in the event Nationwide successfully brought a proceeding against an agent to enforce the RAE.  See RAE, § 41.

Nationwide now moves for judgment on the pleadings.

---

[1] For purposes of the current motion for judgment on the pleadings, Nationwide does not dispute plaintiff's calculation of the amount of the Early Termination Payment that would be due to him under an un-amended RAE.

## II. Standard of Review

A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45–46 (1957). The standard applied to motions for judgment on the pleadings is the same standard applicable to motions to dismiss under Rule 12(b)(6). See Warrior Sports, Inc. v. National Collegiate Athletic Ass'n, 623 F.3d 281, 284 (6th Cir. 2010). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." JPMorgan Chase Bank, N.A. v. Winget, 510 F.3d 577, 582 (6th Cir. 2007) (internal citation and quotation marks omitted). However, the court need not accept as true legal conclusions or unwarranted factual inferences. Id. (citing Mixon v. Ohio, 193 F.3d 389, 400 (6th Cir. 1999)).

To withstand a Rule 12(c) motion for judgment on the pleadings, "a complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory." Commercial Money Ctr., Inc. v. Illinois Union Ins. Co., 508 F.3d 327, 336 (6th Cir .2007). "The factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." Fritz v. Charter Township of Comstock, 592 F.3d 718, 722 (6th Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). A "'legal conclusion couched as a factual allegation'" need not be accepted as true, nor are recitations of the elements of a cause of action sufficient. Hensley Mfg. v. ProPride, Inc., 579 F.3d 603, 609 (6th Cir. 2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

## III. Discussion
### A. Breach of Contract

In this contract action, the parties do not dispute that Ohio law should apply. See RAE, § 22 (Ohio choice-of-law provision). A breach of contract claim includes the following elements: "the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff." Doner v. Snapp, 98 Ohio App.3d 597, 600, 649 N.E.2d 42, 44 (Ohio Ct. App. 1994).

Plaintiff alleges that Nationwide breached the RAE by failing to pay him the Early Termination Payment. Nationwide argues that it had no contractual duty to pay the Early

4

Termination Payment because the Amendment eliminated that duty and replaced it with an obligation to pay the Refund Payment – an obligation that Nationwide performed.

Though having separately alleged that the Amendment is not enforceable, plaintiff insists that his claim for breach of contract exists independent of the validity of the Amendment. He argues (without citation to provisions in the RAE that would support his position) that Nationwide owed him the Early Termination Payment on January 31, 2012, the effective date of his termination of the RAE. According to plaintiff, the breach occurred when Nationwide failed to pay him on January 31, regardless of any subsequent modification to the RAE.

The court disagrees with plaintiff's position for several reasons. The RAE did not provide that the Early Termination Payment had to be paid on the date of termination. Indeed the RAE provided no time frame or deadline by which Nationwide would make the Payment – only that the Payment would be made after termination.[2] See RAE, § 18. In the absence of an express term concerning the time for performance, a party is allowed a reasonable time for performance. See, e.g., Oil, Chem. & Atomic Workers Int'l Union v. Martin Marietta Energy Sys., Inc., 97 Ohio App.3d 364, 369, 646 N.E.2d 883, 886 (Ohio Ct. App. 1994). It is difficult to imagine that only one day would have been a reasonable time frame for Nationwide to have made the payment, particularly when the parties soon thereafter agreed that two months represented a proper time for Nationwide to make the Refund Payment.

The RAE was an executory contract, and the parties had obligations to perform even once plaintiff's agency was terminated on January 31, 2012. Nationwide had to make the Early Termination Payment, and plaintiff, among other things, was required to pay the remaining Value and to return certain materials to Nationwide. See RAE, §§ 12, 18, 28. Contrary to plaintiff's apparent belief, the effective date of the termination of his agency on January 31, 2012 did not also serve as the date by which all obligations had to be performed. Under this mistaken view, plaintiff himself would have been in breach for having failed to pay the remaining Value of $253,298 ($275,224 agreed Value minus $21,926 paid toward the Value) on January 31.

Parties may alter, eliminate, or add to their contractual rights and obligations by means of a modification, if the modification has the consent of both parties and is supported by consideration (issues to be discussed below). See Trader v. People Working Cooperatively, Inc., 104 Ohio App.3d 690, 694-95, 663 N.E.2d 335, 337 (Ohio Ct. App. 1994); GenCorp, Inc. v. Am. Int'l Underwriters,

---

[2] In contrast, the Amendment provided that Nationwide would pay the Refund Payment within two months of the effective date of termination. See Amendment, § 3.

5

178 F.3d 804, 813–14 (6th Cir. 1999) (citing Ohio cases). That is exactly what plaintiff and Nationwide did – they entered into a modification of the RAE by which his right to an Early Termination Payment was eliminated and replaced by the Refund Payment provision. If the Amendment is valid, plaintiff cannot recover for an alleged breach of a contractual obligation that was extinguished by agreement of both parties.

In a recent unpublished opinion, the Sixth Circuit rejected the same type of argument that plaintiff makes here. In Frisch v. Nationwide Mutual Ins. Co., __ Fed. App'x __, 2014 WL 114682 (6th Cir. Jan. 14, 2014), an insurance agent alleged that Nationwide had breached an agency agreement even though the parties had entered into a modified agency agreement that altered the relevant terms of the original agreement. Applying Ohio law, the Sixth Circuit rejected this theory and held: "Now that his modified contract has proved disadvantageous, Plaintiff seeks to sue for breach of an implied duty from the original contract. Having accepted the modification and with no basis to now challenge the validity of that modification, Plaintiff cannot sustain a claim for breach of the unmodified [agency agreement] because the modified terms govern the parties' contractual relationship." 2014 WL 114682, at *5. The same is true here for plaintiff.

But even if plaintiff is correct that he had a viable breach of contract claim against Nationwide as of February 1, 2012, he later executed a release of that claim in the Amendment. The Amendment provided that the agent "waives all claims that he/she has or may have against Nationwide . . . as of the date of his/her execution of this Amendment." Amendment, p. 3. As long as the Amendment is enforceable (to be discussed below), then plaintiff waived his breach of contract claim even if, as he contends, the cause of action accrued before he entered into the Amendment.

### B. Enforceability of the Amendment

It is clear then that the prospects of plaintiff's case, in its current posture, rest on whether he has adequately pleaded a basis for the position that the Amendment unenforceable. He admits that he signed the Amendment and that Nationwide performed by paying him the Refund Payment. Plaintiff alleges, however, that the Amendment is not valid for three reasons: (1) lack of consideration, (2) economic duress and (3) fraudulent inducement.

#### 1. Consideration

"[F]or a modification to a contract to be binding, it must be supported by consideration." Trader, 104 Ohio App.3d at 694-95, 663 N.E.2d at 337. Consideration is a bargained-for legal benefit or detriment. See Kostelnik v. Helper, 96 Ohio St.3d 1, 3, 770 N.E.2d 58, 61 (2002).

"Consideration may consist of either a detriment to the promisee or a benefit to the promisor. . . . A benefit may consist of some right, interest, or profit accruing to the promisor, while a detriment may consist of some forbearance, loss, or responsibility given, suffered, or undertaken by the promisee." Williams v. Ormsby, 131 Ohio St.3d 427, 431, 966 N.E.2d 255, 259 (2012).

The complaint alleges without clarification that the Amendment was not supported by consideration. See Compl., ¶¶ 23, 26(d). The plain language of the Amendment, which is attached to the complaint, proves otherwise. The Amendment contained new promises that Nationwide would make a Refund Payment to plaintiff and would give up its right to be paid the Value remaining at the time of his termination. See 3 Williston on Contracts § 7:4 ("[I]t is a sufficient legal detriment to the promisee if it promises or performs any act, regardless of how slight or inconvenient, which it is not obligated to promise or perform so long as it does so at the request of the promisor and in exchange for the promise. . . . [Detriment] means giving up something which the promisee was theretofore privileged to retain, or doing or refraining from doing something which the promisee was then privileged not to do, or not to refrain from doing.").

In his brief, plaintiff devotes two sentences to the matter, suggesting that the consideration being provided by Nationwide was inadequate and that the issue of the adequacy of consideration is a factual one which should not be resolved on a motion for judgment on the pleadings. This argument is misplaced. Ohio law requires only that some consideration exists, which it does here. "It is axiomatic that courts . . . will not inquire into the adequacy of consideration once consideration is said to exist." Rogers v. Runfola & Assoc., Inc., 57 Ohio St.3d 5, 6, 565 N.E.2d 540, 542 (1990).

### 2. Economic Duress

The complaint's allegations as to duress are similarly cryptic. It alleges that plaintiff was "forced" to sign Amendment and that he had "no alternative but to sign." Compl., ¶¶ 21, 22. In his brief, plaintiff argues that the complaint sufficiently alleges that he was under economic duress when he signed the Amendment. Seizing upon the allegation in the complaint that he had made "professional and financial arrangement[s] in anticipation of receiving the Early Termination Payment," Compl., ¶ 19, plaintiff makes new factual assertions in his brief that he had incurred financial debts and was in "financial trouble" when he signed the Amendment. Pl.'s Response Br., at p. 3. According to the brief, plaintiff was so "desperate" for money that, after not getting the Early Termination Payment on January 31, 2012, he "had no real choice but to accept" what little amount of money he could get out of the Amendment. Id., at pp. 3, 7.

7

The court must reject plaintiff's economic duress argument. The complaint does not use the word "duress" and does not otherwise contain allegations that would put a defendant on notice that plaintiff would be claiming economic duress. See Fed. R. Civ. P. 8(a). Further, plaintiff failed to plead duress as an affirmative defense in his answer to the counterclaim. See Fed. R. Civ. P. 8(c).

Finally, even if the court were to consider the new factual allegations, the court would find that they fall well short of sufficiently pleading economic duress. Duress occurs when one party to a contract subjects the other to "'a wrongful or unlawful act or threat'" that deprives him "'of his unfettered will.'" Blodgett v. Blodgett, 49 Ohio St.3d 243, 246, 551 N.E.2d 1249, 1251 (1990) (quoting 13 Williston on Contracts 704, § 1617 (3d Ed. 1970)). "It is not enough to show that one assented merely because of difficult circumstances that are not the fault of the other party." Id., 49 Ohio St.3d at 246, 551 N.E.2d at 1251-52. In order to avoid a contract on the basis of economic duress, a party must show that: (1) one side involuntarily accepted the terms of another; (2) circumstances permitted no other alternative; and (3) those circumstances were the result of coercive acts of the other party. Id., 49 Ohio St.3d at 246, 551 N.E.2d at 1251.

Plaintiff's claim of economic duress fails on all fronts. He has not alleged facts to support an inference that his acceptance of the Amendment was involuntary. He had the Amendment in hand for eleven days before he signed it. This gave him time to reflect on the proposed modifications and consult an advisor or attorney. The letter itself encouraged plaintiff to contact Nationwide if he wanted to discuss the matter.

Further, the allegations that plaintiff was desperate for money and in financial difficulty, without more, do not support an inference that he had no alternative but to sign the Amendment. The allegations do not support a plausible inference that plaintiff had reason to expect that Nationwide would be more quick to pay the Refund Payment than it would the Early Termination Payment. Given a choice between the two payments, a reasonable person desperate for money would have chosen the $97,000 Early Termination Payment over the $21,926 Refund Payment. Plaintiff could have declined to sign the Amendment and demanded that Nationwide make the Early Termination Payment. Nationwide in fact acknowledged in the letter that plaintiff had a right to the Early Termination Payment, absent a modification.

And this leads to the final point – the allegations do not support an inference that Nationwide acted coercively by wrongful act or threat. The letter made no threat and it put no time pressure on plaintiff to accept. Rather, it proposed certain lawful modifications to the parties' contractual relationship, recognized his expectation interest in the Early Termination Payment,

invited him to contact Nationwide to discuss the matter, and plainly stated Nationwide's calculation of the amount of the Refund Payment.

Plaintiff appears to argue that the coercive element to Nationwide's conduct was its refusal to pay the Early Termination Payment on January 31, 2012. But, as discussed above, plaintiff has not established a basis for his assertion that Nationwide was required to pay him on that date. To the extent that plaintiff's commitments were such that his financial situation worsened when he did not have $97,000 in his possession on January 31, that hardship was not of Nationwide's doing and does not establish duress. See Blodgett, 49 Ohio St.3d at 246, 551 N.E.2d at 1251-52.

### 3. Fraudulent Inducement

Fraud in the inducement occurs when a party enters into an agreement through fraud or misrepresentation by the other party. ABM Farms, Inc. v. Woods, 81 Ohio St.3d 498, 502, 692 N.E.2d 574, 578 (1998). In order to establish fraud in the inducement, a plaintiff must show that the other party to the contract knowingly (or with reckless disregard) made a material misrepresentation with the intent of inducing the plaintiff's reliance, and that the plaintiff justifiably relied upon the misrepresentation to his detriment. Id.; Deutsche Bank Nat'l Trust Co. v. Pevarski, 187 Ohio App.3d 455, 470-71, 932 N.E.2d 887, 899 (Ohio Ct. App. 2010).

The complaint alleges that the Letter misled plaintiff about: (1) the need to enter into the Amendment, (2) the legality of him receiving the Early Termination Payment and (3) the tax consequences of entering into the Amendment. The court finds that the complaint fails to plead fraudulent inducement with respect to each of these alleged misrepresentations.

The Letter told plaintiff that a modification "was in order" so as to ensure that Nationwide would "repay you for your contributions to the program." Letter, ¶ 2. The complaint contains a conclusory assertion that this representation was false, but does not explain how it was false. Rule 9(b) requires that a complaint plead the circumstances constituting fraud with particularity. The complaint here fails to do so, and a reading of the Amendment confirms that the modification did in fact accomplish the Letter's stated goal of repaying plaintiff. The Amendment provided plaintiff with a Refund Payment equivalent to the amount he had paid toward the Value, and it eliminated his obligation to pay the remaining Value – in effect, he was given his money back and allowed to keep the commissions he had earned.

Next the complaint alleges, again in conclusory fashion, that the Letter misrepresented the legality of plaintiff receiving the Early Termination Payment. It is unclear to the court what the complaint means by this (and plaintiff's brief does not explain) because the Letter itself contains no

9

representation that it would have been illegal for plaintiff to have received the Early Termination Payment.

Finally, the complaint alleges that the Letter misrepresented the tax consequences of plaintiff entering into the Amendment. The Letter stated that as a result of the modifications made by the Amendment – whereby plaintiff would receive the $21,926 Refund Payment instead of the Early Termination Payment, which plaintiff had calculated to be $97,000 – plaintiff's tax liability would not be increased and it would reduce the risk of any "tax penalties that could have been associated with the Early [Termination] Payment." Letter, ¶ 2. The Letter stated that "[b]ecause the Refund Payment is a return to you of the money you have paid to Nationwide . . . you will not receive a Form 1099-MISC." Id., ¶ 4. The complaint fails to allege what was false about these statements; it merely alleges that plaintiff was misled, without explaining what was false or misleading about the statements.[3] Further, the complaint fails to allege that plaintiff suffered any detriment by relying on the Letter; that is, the complaint does not allege that plaintiff's tax liability actually increased or that he incurred any tax penalty as a result of entering into the Amendment.

### 4. Summary

The court finds that plaintiff has failed to adequately allege lack of consideration, economic duress or fraudulent inducement. The court thus finds that Nationwide is entitled to judgment on the pleading against plaintiff's claims for breach of contract and fraudulent inducement and that Nationwide is entitled to judgment in its favor on its counterclaim for declaratory judgment that the Amendment is valid and enforceable.

### C. Other Fraud Claims

Though labeled in the complaint as separate counts for fraud and for breach of contract accompanied by a fraudulent act, these claims sound in substance as ones for fraudulent inducement. See Compl., ¶¶ 30, 36 (alleging that the acts of fraud were committed to induce plaintiff to enter into the Amendment). Moreover, these claims fail in their own right. As explained above, the complaint does not state a claim for breach of contract or allege fraud with particularity, and these failings are fatal to both claims. See Mabry-Wright v. Zlotnik, 165 Ohio App.3d 1, 7, 844 N.E.2d 858, 862 (Ohio Ct. App. 2005) (breach of contract accompanied by fraud); Burr v. Bd. of County Comm'rs, 23 Ohio St.3d 69, 73, 491 N.E.2d 1101, 1105 (1986) (fraud).

---

[3] It would seem too that any alleged reliance would not be justifiable. The statement about a reduced risk of tax penalties is speculative in nature ("risk . . . that could have been associated" with the Early Termination Payment) and plaintiff had ample time to consult with an advisor about the tax implications of agreeing to the Amendment.

### D. South Carolina Unfair Trade Practices Act (SCUTPA)

South Carolina law prohibits the use of "unfair or deceptive acts or practices in the conduct of any trade or commerce." S.C. Code Ann. § 39-5-20(a); see also S.C. Code Ann. § 39-5-140(a) (providing private cause of action). Nationwide argues that the statute does not apply to "practices related to insurance," Ray v. Gen. Ins. Co. of Am., No. 3:11-cv-449, 2011 WL 1254106, at *2 (D.S.C. Apr. 4, 2011), but this is an employment-related dispute and not one over insurance coverage.[4] See id. (holding that SCUTPA does not apply to disputes over insurance coverage); K&M Merch., LLC v. Am. Western Home Ins. Co., No. 4:09-cv-1943, 2010 WL 597217, at *1 (D.S.C. Feb. 16, 2010) (same).

Nationwide further argues that even if SCUTPA does apply, the complaint does not state a claim. The court agrees. The elements of a SCUPTA claim are: (1) the defendant engaged in an unfair or deceptive act in the conduct of trade or commerce; (2) the unfair or deceptive act affected the public interest; and (3) the plaintiff suffered monetary or property loss as a result of the defendant's unfair or deceptive act. Health Promotion Specialists, LLC v. S.C. Bd. of Dentistry, 403 S.C. 623, 638, 743 S.E.2d 808, 816 (S.C. 2013). "An act is 'unfair' when it is offensive to public policy or when it is immoral, unethical, or oppressive." Gentry v. Yonce, 337 S.C. 1, 12, 522 S.E.2d 137, 143 (S.C. 1999). "An act is 'deceptive' when it has a tendency to deceive." Id.

The alleged actionable conduct is Nationwide's failure to make the Early Termination Payment and its representations in the Letter about the need to enter into the Amendment and the tax consequences of entering into the Amendment. As to the failure to make the Early Termination Payment, a "deliberate or intentional breach of a valid contract, without more, does not constitute a violation of the SCUTPA." Ardis v. Cox, 314 S.C. 512, 519, 431 S.E.2d 267, 271 (S.C. Ct. App. 1993). And as discussed above, the complaint does not sufficiently allege that the representations in the Letter were false or deceptive.

### E. Attorneys' Fees

In the branch of its motion concerning the counterclaim, Nationwide seeks a declaration that it is entitled to a contractual award of attorneys' fees. The RAE contained an attorneys' fees

---

[4] SCUTPA exempts certain trade practices from its coverage, including practices covered by the South Carolina Insurance Trade Practices Act. S.C. Code Ann. § 39-5-40(c). Nationwide argues that its dispute with plaintiff is covered by the latter Act's provision concerning false statements as to insurance business. S.C. Code Ann. § 38-57-50. However, that provision appears to be directed toward statements that are advertised or made public, and the complaint does not allege that Nationwide made the dealings at issue here public.

provision that was not altered by the Amendment: "In the event that Nationwide is successful in any suit or proceeding brought or instituted by us to enforce any of the provisions of this Agreement . . . Agent agrees to pay to us such reasonable attorneys' fees as are permitted by statute and/or fixed by the court." RAE, § 41. Thus, this section of the RAE created a right to attorneys' fees for suits or proceedings successfully brought by Nationwide against an agent, but not for suits successfully defended by Nationwide.

Nationwide correctly argues that its counterclaim for declaratory judgment concerning the validity of the Amendment is a "suit or proceeding." See, e.g., F.D.I.C. v. S&I 85–1, Ltd., 22 F.3d 1070, 1074 (11th Cir. 1994) (holding that a counterclaim is a suit or proceeding within the meaning of 12 U.S.C. § 1819); Elfelt v. U.S., 289 F.Supp.2d 881, 885-86 (E.D. Mich. 2003) (holding that a counterclaim is a suit or proceeding under 28 U.S.C. § 1345); FDIC v. Beatley, No. 2:10-cv-229, 2011 WL 665448, at *3 (S.D. Ohio Feb. 11, 2011).

Nationwide is thus entitled to an award of attorneys' fees. Even so, the court notes that the counterclaim implicates certain issues that the complaint had already expressly raised – lack of consideration and fraudulent inducement. Therefore the court's fee award, which will be determined after receipt of further submissions by the parties, will be apportioned or tailored to reflect only those expenditures attributable to the counterclaim.

**IV.    Conclusion**

Accordingly, Nationwide's motion for judgment on the pleadings (doc. 34) is GRANTED in its entirety. Within 30 days of the date of this order, Nationwide shall submit a brief with supporting evidentiary materials directed to the issue of the amount of a reasonable fee award. Response and reply briefs will be due in accordance with S.D. Ohio Local Civil Rule 7.2(a)(2).


                                              s/ James L. Graham
                                              JAMES L. GRAHAM
                                              United States District Judge

DATE: May 20, 2014